UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIANE R. GRABOWSKI,

                              Plaintiff,

                v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                              Defendant.
_____

**DECISION
and
ORDER**

**16-CV-00592F**
(**consent**)

APPEARANCES:              LEWIS L. SCHWARTZ, PLLC
                                LEWIS L. SCHWARTZ, of Counsel
                                Attorney for Plaintiff
                                1231 Delaware Avenue
                                Suite 103
                                Buffalo, New York  14209

                                JAMES P. KENNEDY, JR.
                                UNITED STATES ATTORNEY
                                Attorney for Defendant
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York  14202
                                     and
                                DANIELLA M. CALENZO and
                                SUSAN JANE REISS,
                                Special Assistant United States Attorneys, of Counsel
                                United States Attorney's Office
                                c/o Social Security Administration
                                Office of General Counsel
                                26 Federal Plaza – Room 3904
                                New York, New York  10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 20). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 13, 2017 (Dkt. 9), and by Defendant on May 30, 2017 (Dkt. 16).

## BACKGROUND

Plaintiff Diane R. Grabowski ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on January 2, 2013, for Disability Insurance Benefits under Title II of the Act ("SSDI" or "disability benefits"). Plaintiff alleges she became disabled on September 13, 2009, based on rheumatoid arthritis, degenerated discs, and vascular disease. AR[2] at 194. Plaintiff's application was denied May 13, 2013, AR at 96-99, and at Plaintiff's timely request, on February 2, 2015, a hearing was held before administrative law judge Stephen Cordovani ("ALJ Cordovani"). AR at 39-86, 102-03. Appearing and testifying at the hearing were Plaintiff, with legal representation, and vocational expert ("VE") Gerard Alberigi ("VE Alberigi").

On April 13, 2015, the ALJ issued a decision denying Plaintiff's claim, AR at 8-24, which Plaintiff appealed to the Appeals Council, AR at 30-31, 33-34, with Lewis L. Schwartz, Esq. appointed to represent Plaintiff on her administrative appeal. AR at 32-35. On July 6, 2016, the Appeals Council issued a decision denying Plaintiff's request

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on October 4, 2016 (Dkt. 6).

for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-7. On July 19, 2016, Plaintiff commenced the instant action seeking judicial review of the ALJ's April 13, 2015 decision ("the ALJ's decision").

On January 13, 2017, Plaintiff filed a motion for judgment on the pleadings (Dkt. 9) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum"), and Plaintiff's Appendix of Missing Evidence (Dkt. 9-2) ("Plaintiff's Appendix"). On May 30, 2017, Defendant filed a motion for judgment on the pleadings (Dkt. 16) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to the Local Standing Order on Social Security Cases (Dkt. 16-1) ("Defendant's Memorandum"). In further support of Plaintiff's Motion, Plaintiff filed on July 20, 2017, Plaintiff's Reply (Dkt. 19) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED and the matter is REMANDED for further proceedings in accordance with this Decision and Order; Defendant's Motion is DENIED.

## **FACTS**[3]

Plaintiff Diane R. Grabowski ("Plaintiff" or "Grabowski"), born February 12, 1954, was 55 years old as of September 13, 2009, her alleged disability onset date ("DOD"), and 59 years old as of September 30, 2013, her date last insured for purposes of obtaining SSDI benefits. Plaintiff, who lives in a house with her husband, AR at 45,

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

3

graduated from high school, AR at 195, and has past relevant work experience working for Office Depot first as a cashier and then a bookkeeper, and most recently as an office clerk at a real estate company, AR at 45-46, 71-72, work which, as performed by Plaintiff, qualifies as unskilled to semi-skilled, and sedentary to medium exertion. AR at 71-76.

The ALJ found Plaintiff has the severe impairments of discogenic (damaged vertebral discs) and degenerative disc disease of the lumbar spine, vascular disease, and rheumatoid arthritis, AR at 13-15, but that none of these impairments, either alone or in combination with the others, posed more than a minimal effect on Plaintiff's ability to work, AR at 15-16, and that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work except for working arounds such hazards as unprotected heights, moving mechanical parts, and flammable liquids, and further limited to occasional stair climbing and balancing, no kneeling, crouching, crawling, or climbing of ladders, ropes or scaffolds, no exposure to extreme heat, extreme cold, or vibration, and the ability to sit and stand at will, AR at 16-23, which restrictions would not prevent Plaintiff from performing her past relevant work ("PRW"), as a bookkeeper, AR at 23-24, such that Plaintiff is not disabled. AR at 24. While Plaintiff's administrative case was pending before the Appeals Council, Plaintiff submitted additional medical exhibits including opinions from Drs. Mallela and Anain, which have yet to be added to the exhibits within Plaintiff's Administrative Record. *See* Dkt. 9-2.

**Lumbar Disease and Rheumatoid Arthritis**

As relevant to the pending motions, in 1999, Plaintiff underwent right-side carpal tunnel release surgery, AR at 276, and was diagnosed with degenerative joint disease

4

after injuring her back, *id.* at 271, 358, 366, for which Plaintiff has had several courses of physical therapy, massage therapy, and chiropractic care, *id.* at 343-63, 404-07, 735-45, 748-62, as well as aqua therapy, *id.* at 366, receiving regular medical treatment for her back from Frederick B. McAdam, M.D. ("Dr. McAdam"), and physician assistant Paul R. Olizarowicz ("PA Olizarowicz"). *Id.* at 379-544, 650-610. Numerous lumbar facet joint injections by Dr. McAdam and PA Olizarowicz provided significant, but temporary relief of Plaintiff's back pain. *Id.* at 360, 516, 523, 527-28, 529, 533-34, 535, 539-40, 541, 610. Magnetic resonance imaging ("MRI") taken November 29, 2007, and May 26, 2009, showed degenerative changes of Plaintiff's lumbar spine, including mild retrolisthesis at L1-2, disc bulging at L1-2, L3-4, and L4-5, and disc herniation and mild central canal stenosis at L3-4. AR at 408-09, 562. April 26, 2010 EMG and nerve conduction studies of Plaintiff's lower extremities performed by Michael S. Cicchetti, M.D. ("Dr. Cicchetti"), were negative. AR at 423. On October 14, 2010, diagnostic musculoskeletal ultrasound-guided injection for left shoulder pain revealed a bursal-sided partial thickness tear of the left supraspinatus tendon, and left subacromial bursitis. AR at 438-39. On November 11, 2010, an MRI of Plaintiff's left shoulder on showed AC joint degenerative changes, but no rotator cuff tear. Left knee X-rays taken September 17, 2012, showed mild soft tissue swelling anterior to the patella, nonspecific but possibly caused by soft tissue contusion. AR at 335. On October 10, 2012, Rajitha Mallela, M.D. ("Dr. Mallela"), diagnosed rheumatoid arthritis based on blood work showing significant positive rheumatoid factor and CCP antibody, a condition for which Dr. Mallela has regularly treated Plaintiff. AR at 625-67. Bilateral hand, foot and shoulder X-rays taken October 16, 2012, revealed degenerative

changes. AR at 336-39. On October 17, November 5, December 12, and 27, 2017, January 14, March 18, and June 19, 2013, Dr. Mallela's subsequent neurological examinations were normal and examinations of Plaintiff's joints were largely unremarkable except for some mild ulnar deviation of the hands. On August 19, 2015, Dr. Mallela completed a Manipulative Limitations Medical Source Statement, reporting that as of September 30, 2013, Plaintiff exhibited tenderness, pain, redness, soft tissue swelling, limitation of motion, joint warmth, joint deformity, and reduced grip strength in her upper extremities, had pain/paresthesia in her left hand attributed to carpal tunnel, was limited to lifting one pound with either arm, and during an 8-hour work day, and additional limits to the percentage of time performing certain functions including 40 % for grasping, turning, and twisting objects, 30 % for fine finger manipulations, 50 % for reaching in front of her body, and 100 % for reaching overhead. [4]

**<u>Vascular Disease</u>**

On February 1, 2008, Plaintiff commenced endovascular treatment for varicose veins in her lower extremities with Paul M. Anain, M.D. ("Dr. Anain"), a vascular surgeon, who diagnosed severe greater saphenous reflux on both lower extremities, for which he performed greater saphenous vein radiofrequency ablation surgery on the left on March 26, 2008, and on the right on May 21, 2008, subsequent to which Plaintiff commenced regular sclerotherapy. AR at 704-28. On October 17, 2008, Dr. Anain reported Plaintiff "is doing very well and is pleased with her left lower extremity sclerotherapy," and commenced similar treatment on Plaintiff's right lower extremity. AR at 725. On February 27, 2009, Dr. Anain reported that Plaintiff was "doing well with

---

[4] Although Dr. Mallela's opinion has yet to be made part of the Administrative Record, Plaintiff's filed a copy for the court's review. *See* Dkt. 9-2 at 2-3.

a history of variscosities in the right leg and the old sites are well healed. . . . No significant variscosities remain." AR at 726-28.

On January 11, 2013, Plaintiff returned to Dr. Anain with complaints of gradually worsening bilateral swelling of her lower extremities, and a venous Doppler study was positive for venous insufficiency. AR at 689-90. On May 31, 2013, Plaintiff reported despite daily use of knee-high compression stockings, Plaintiff's feet were swollen and purple with severe leg pains, and only elevating her legs provided relief. *Id.* at 691. Dr. Anain's examination showed edema of bilateral ankles, and diffuse, prominent varicose veins in the bilateral calves. *Id.* Dr. Anain noted bulging, tender varicose veins on Plaintiff's left leg on December 16, 2013, *id.* at 695, and on Plaintiff's right leg on October 10, 2014. *Id.* at 699. In a letter dated August 3, 2015, Dr. Anain reported treating Plaintiff for seven years for leg pain and severe varicose veins with swelling, opining Plaintiff can stand or sit for no longer than 30-60 minutes.[5]

## **DISCUSSION**

**1.   Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by

---

[5] Plaintiff filed a copy of Dr. Anain's opinion, *see* Dkt. 9-2 at 4, which has yet to be made part of the Administrative Record.

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

8

in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[7] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity," which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on

---

[7] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement through September 30, 2013, AR at 13, Plaintiff did not engage in substantial gainful activity since September 13, 2009, her alleged disability onset date, *id.*, Plaintiff suffers from the severe impairment of discogenic and degenerative disease of the lumbar spine, vascular disease, and rheumatoid arthritis, *id.*, at 13-15, that Plaintiff's medically determinable impairments of hypertension, diabetes mellitus, headaches, anxiety and depression do not have more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 15-16, that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, *id.* at 17, and that Plaintiff retains the RFC to perform sedentary work, including her PRW as a bookkeeper, *id.* at 23-24, such that Plaintiff is not disabled as defined under the Act.  *Id.* at 24.  Plaintiff does not contest the ALJ's findings with regard to the first, second and third steps of the five-step analysis, but argues the record is devoid of substantial evidence supporting the ALJ's determination that Plaintiff, despite numerous physical and mental impairments, retains the RFC for a limited range of sedentary work, including her PRW as a bookkeeper.  Plaintiff's Memorandum at 17-27.

Because no challenge is raised to the first three steps of the five-part analysis, and the ALJ did not reach the fifth step, the court does not address them, but limits its review to only the fourth step, *i.e.*, whether substantial evidence in the record supports

the ALJ's determinations that Plaintiff retains the RFC to perform sedentary work, as limited by her need to alternate between standing and sitting at will, avoid working at unprotected heights, around moving machinery, and around flammable liquids, only occasional stair climbing and balancing, no kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds, and no exposure to extreme heat or cold, or vibration, as well as that Plaintiff's RFC does not prevent her from performing her PRW as a bookkeeper.

The fourth step of the five-part analysis is to consider the applicant's RFC, *i.e.*, the ability to perform physical or mental work activities on a sustained basis despite limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any PRW, defined as work as the claimant actually performed it or as it generally is performed in the national economy, within the last 15 years or within 15 years prior to the date disability must be established. 20 C.F.R. §§ 404.1560(b)(1), and 416.960(b)(1). In the instant case, Plaintiff argues the ALJ's determination regarding her RFC is not supported by substantial evidence because the opinion of Plaintiff's treating rheumatologist, Dr. Mallela, submitted to the Appeals Council, was not evaluated, Plaintiff's Memorandum at 17-20; Plaintiff's Reply at 4-7, the ALJ failed to develop the record by obtaining an RFC opinion from a treating physician, Plaintiff's Memorandum at 20-24; Plaintiff's Reply at 7-9, records from another individual are included in Plaintiff's medical records, Plaintiff's Memorandum at 24; Plaintiff's Reply at 9-10, and Plaintiff's PRW as a bookkeeper should have been evaluated as a composite job. Plaintiff's Memorandum at 25-27; Plaintiff's Reply at 10-11. In opposition, Defendant argues Dr. Mallela's

opinion need not be considered because it is neither material nor new, Defendant's Memorandum at 18-26, the ALJ was not required to develop the record by obtaining an RFC from a treating source, *id.* at 26-29, and the ALJ properly found Plaintiff could perform her PRW as a bookkeeper. *Id.* at 29-30. A review of the Administrative Record establishes the matter must be remanded because the ALJ improperly assessed Plaintiff's RFC based on bare medical findings and failed to develop the record in assessing that Plaintiff retained the RFC to perform her PRW, as well as failed to properly evaluate Plaintiff's PRW as a composite job.

      It is undisputed that the Administrative Record is without any RFC assessment by any treating or consultative medical source. In such situations, the ALJ is not permitted to substitute his lay evaluation as to a claimant's RFC, but has an affirmative duty to develop the record, unless the record "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Commissioner of Social Security*, 521 Fed.Appx. 29, at * 4 (2d Cir. Apr. 2, 2013) (citing 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6) (providing the Commissioner "will request a medical source statement" containing an opinion regarding the claimant's residual capacity)). Significantly, in *Tankisi*, the Second Circuit held the ALJ did not err in assessing a claimant's RFC despite the absence of an RFC in the record because, unlike in the instant case, the extensive medical record did include an assessment of the claimant's limitations from a treating physician, which supported the ALJ's RFC assessment. *Id.* at ** 4-5. In particular, "[a]lthough residual functional capacity determinations are reserved for the Commissioner, the administrative law judges are unqualified to assess residual functional capacity on the basis of bare medical findings

in instances where there is a relatively high degree of impairment." *Palascak v. Colvin*, 2014 WL 1920510, at * 8 (W.D.N.Y. May 14, 2014) (internal citations and quotation marks omitted).

In the instant case, the Administrative Record contains voluminous medical records, yet is devoid of any assessment of Plaintiff's limitations posed by her various impairments. Further, it is undisputed that Plaintiff suffers from discogenic and degenerative disease of the lumbar spine, vascular disease, and rheumatoid arthritis, impairments the ALJ found are severe. AR at 13-15. Further, that the ALJ considered Plaintiff capable of sedentary work, the further restrictions, including the ability to alternate between standing and sitting at will, avoid working at unprotected heights, moving machinery, and flammable liquids, only occasional stair climbing and balancing, no kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds, and no exposure to extreme heat or cold, or vibration, establishes the ALJ found Plaintiff has "a relatively high degree of impairment." *Palascak*, 2014 WL 1920510, at * 8. Because the ALJ's RFC assessment is without evidentiary support, despite Plaintiff's "relatively high degree of impairment," the matter should be remanded to the ALJ to obtain an assessment from a medical source of the limitations to Plaintiff's ability to work based on her impairments.

With regard to Plaintiff's challenge that Defendant erred in failing to address the opinion of Dr. Mallela, Plaintiff's treating rheumatologist, that was submitted to the Appeals Council, Plaintiff's Memorandum at 17-20; Plaintiff's Reply at 4-7, the Appeals Council stated the opinion did not provide any basis for changing the ALJ's decision because it pertained to a period of time after September 30, 2013, Plaintiff's date last

insured. AR at 2. Defendant maintains the Appeals Council was correct because Dr. Mallela's opinion was neither new nor material, and does not relate to the period before the date of the ALJ's decision. Defendant's Memorandum at 18-26. This is erroneous.

The relevant regulations provide that the Appeals Council must consider evidence submitted after the ALJ's decision, while the appeal is pending, so long as the evidence is new, material, and related to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(a)(5). Here, although Dr. Mallela's opinion is dated August 19, 2015, almost two years after Plaintiff's date last insured of September 30, 2013, the opinion specifically states that Dr. Mallela found Plaintiff limited as provided within the opinion "as of <u>at least</u> September 30, 2013," Dkt. 9-2 at 3 (underlining added), which time period is prior to the ALJ's April 13, 2015 decision. Accordingly, Dr. Mallela's opinion pertains to the relevant time period. Dr. Mallela's opinion is new insofar as there is no other evidence in the record addressing the degree to which Plaintiff's impairments limit use of her upper extremities, specifically, Plaintiff's shoulders and hands. Further, the opinion evidence is material because it places more than minimal limitations on Plaintiff's use of her upper extremities. Defendant's argument that Dr. Mallela attributes such limitations to recently diagnosed carpal tunnel syndrome, Defendant's Memorandum at 21, ignores that the reference to carpal tunnel syndrome is to the cause of Plaintiff's "pain/paresthesia" in her left hand, Dkt, 9-2 at 2, and not to the other signs and symptoms bearing on Plaintiff's RFC noted by Dr. Mallela, including tenderness, redness, soft tissue swelling, limitation of motion, joint warmth, joint deformity, and reduced grip strength. *Id.* It is also possible Dr. Mallela, after treating Plaintiff for rheumatoid arthritis since 2012, later amended her diagnosis to reflect left-

side carpal tunnel syndrome, which was not previously diagnosed. Such confusion creates a gap in the record which the ALJ is obligated to close by seeking additional information, especially regarding how Plaintiff's impairments limit her ability to work. *Rosa*, 168 F.3d at 79 ("where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel'" (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996))).

      Moreover, Dr. Mallela has been Plaintiff's treating rheumatologist since 2012, and the Act requires ALJs to grant significant weight to treating physicians' opinions supported by medical evidence in the record and requires that a treating physician opinion be granted "controlling weight" when the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2). "An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give the opinion," *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), including the frequency of examination, length, nature, and extent of the treating relationship, evidence supporting and contrasting the opinion, whether the opinion is consistent with the record as a whole, whether the opinion is from a specialist, and any other factors supporting or contradicting the opinion. *Gunter v. Commissioner of Social Security*, 361 Fed.Appx. 197, 199 (2d Cir. Jan. 15, 2010). The ALJ also should "give good reasons" for the weight given a treating physician's opinion. *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)). Further, the Appeals Council is obligated for apply the same rules in considering treating physician opinion evidence. *Beck v. Colvin*, 2013 WL 5533571, at *

8 (W.D.N.Y. Oct. 7, 2013) (citing 20 C.F.R. § 416.927(e)(3)).  Significantly, here, in light of Plaintiff's age, education, and work experience, accepting Dr. Mallela's limitations, *i.e.*, limiting Plaintiff's use of her upper extremities, would render Plaintiff unable to perform her PRW as a bookkeeper, as well as any similar job to which Plaintiff's bookkeeper job skills are transferrable, and require a finding that Plaintiff is disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.06 (providing a claimant of advanced age (over 55 years of age), with a high school education, whose previous semi-skilled work skills are not transferrable is disabled).  Accordingly, upon remand, the ALJ is to consider Dr. Mallela's opinion and explain what weight it is accorded and the reasons for such weight.

The ALJ also erred in determining Plaintiff was capable of a limited range of sedentary work and, thus, could perform her PRW as a bookkeeper because, as described by Plaintiff, the job was a composite of a bookkeeper and cashier.  AR at 73 (explaining that when Plaintiff worked at Office Depot, she originally was hired as a cashier, later promoted to the bookkeeper job, but still called on to work as a cashier when needed).  Pursuant to Social Security Ruling ("SSR") 82-61, jobs with "significant elements of two or more occupations . . . have no counterpart in the DOT,"[8] and, as such, the VE should have been asked whether Plaintiff could have performed all elements of the bookkeeper job as Plaintiff performed it, which did not occur here.  Should it be determined, upon remand, that Plaintiff did not, as of September 30, 2013, have the RFC to perform her PRW as a bookkeeper, then the ALJ must, at the fifth step of the analysis, determine whether, given Plaintiff's age, education, and past work

---

[8] DOT is an acronym for the United States Department of Labor's publication "Dictionary of Occupational Titles."

16

experience, she retains the RFC to "perform alternative substantial gainful work which exists in the national economy."  *Rosa*, 168 F.3d at 77 (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

Insofar as Plaintiff asserts that Dr. Mallela's opinion, despite being submitted to the Appeals Council following the ALJ's decision, but prior to the Appeals' Council's decision, has not been made part of the Administrative Record as required by 20 C.F.R. § 404.1527(c), Plaintiff's Memorandum at 18-19, Defendant does not deny Dr. Mallela's opinion is missing from the Administrative Record, but maintains a corrected certified Administrative Record will be filed as soon as it can be assembled.  Defendant's Memorandum at 18 n. 5.  Nevertheless, because Dr. Mallela's opinion remains missing from the Administrative Record, upon remand the Defendant is ORDERED to assemble a corrected certified copy of the Administrative Record containing Dr. Mallela's opinion.

The court further addresses Plaintiff's argument that the inclusion in the Administrative Record of medical reports relating to another individual's claim may have improperly factored in Defendant's decision denying her claim.  Plaintiff's Memorandum at 24; Plaintiff's Reply at 9-10.  Defendant does not deny the Administrative Record includes some medical records pertaining to an individual other than Plaintiff, but maintains it is implausible that such medical reports, particularly a chest X-ray that pre-dates Plaintiff's alleged onset date by six years,[9] would have influenced Defendant's determination that Plaintiff is not disabled, especially given the ALJ does not reference such reports.  Defendant's Memorandum at 28-29.  Defendant is ORDERED, upon

---

[9] The court notes that other than the chest X-ray findings, these records, albeit erroneously filed in the Administrative Record, are largely illegible.

17

remand, to remove from the Administrative Record all medical reports that do not pertain to Plaintiff, including those found at AR 259-63, 269-70.

Mindful of the often painfully slow process by which disability determinations are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), district courts may therefore "when appropriate set a time limit for action by the administrative tribunal, and this is often done." *Zambrano v. Califano,* 651 F.2d 842, 844 (2d Cir. 1981) (citing cases). *See also Michaels v. Colvin*, 621 Fed.Appx. 35, 41 (2d Cir. Aug. 14, 2015) (directing upon remand for further fact-finding at step five that given eight years had elapsed since the plaintiff filed for disability benefits, the further administrative proceedings were to be completed within 120 days, with the Commissioner's final decision to be rendered within 60 days of any appeal by the plaintiff from the ALJ's decision, and citing *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (imposing time limit on remand where "the past delay is of such magnitude – years – that a time limit is imperative") *as amended on reh'g in part*, 416 F.3d 101, 106 (2d Cir. 2005) (providing that if deadlines for further administrative proceedings at the fifth step, on which the Commissioner bears the burden of proof, are not met, "a calculation of benefits owed [plaintiff] must be made immediately)). In this case, Plaintiff filed her application for disability on January 2, 2013, AR at 172-78, testified at the administrative hearing on February 2, 2015, AR at 39-86, and received a final decision of not disabled on April 13, 2015. *Id*. at 8-29. Upon reviewing the ALJ's determination, the Appeals Council denied Plaintiff's request for review on July 6, 2016. AR at 1-7. As it has been more than five years since Plaintiff first filed her application for disability,

further delay for remand is a hardship this Plaintiff should not bear. Remand should therefore also require the ALJ to complete all administrative proceedings at the fourth and, if necessary, fifth steps related to Plaintiff's claim within 120 days of this Decision and Order, with a final decision to be rendered by the Commissioner within 60 days of any appeal of the ALJ's decision filed by Plaintiff. *Michaels*, 621 Fed.Appx. at 41. If, upon remand, it is determined Plaintiff is unable to perform her PRW, requiring proceeding to the fifth step, should these deadlines not be met, "'a calculation of benefits owed [Plaintiff] must be made immediately.'" *Michaels*, 621 Fed.Appx. at 41 (quoting *Butts*, 416 F.3d at 106).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is GRANTED and the matter is REMANDED for further proceedings in accordance with this Decision and Order; Defendant's Motion (Dkt. 16) is DENIED.
SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	October 17, 2018
	Buffalo, New York